**D. M. DARDEN, Jr., Petitioner,**

**v.**

**Peggy Sames HARRISON, Respondent.**

**No. B–4098.**

Supreme Court of Texas.

June 26, 1974.

Rehearing Denied July 24, 1974.

David G. Copeland and Sherman C. Stearns, Waco, for petitioner.

Clark, Fisher, Gorin, McDonald & Ragland, Leonard L. Gorin, Waco, for respondent.

McGEE, Justice.

This case involves suit on two promissory notes. The trial court gave judgment for Plaintiff Peggy Sames Harrison, representative of the payee, against D. M. Darden, the maker. The court of civil appeals affirmed. Tex.Civ.App., 495 S.W.2d 49. We reverse the judgments of the courts below.

We will refer to the parties by their roles in the trial court.

Frank B. Tirey, Jr., died in 1969. Thereafter, the Plaintiff Harrison as surviving widow, independent executrix, and sole devisee of Frank B. Tirey, Jr., sued Darden on two notes found in Tirey's safety deposit box which were executed in favor of Tirey. The two notes bore the same 1967 date of execution, matured on different dates, and totaled $23,020.36. Darden answered the suit claiming that

there was no consideration to support a contract between him and Tirey; that he was an accommodation maker, who received no consideration for signing, and hence was not liable to the party accommodated; and that he was entitled to certain offsets if liable on the notes for sums owed him by Tirey. The cross claim for offset was abandoned in the trial court.

Tirey and Darden until at least 1967 were engaged in various business enterprises together. One such enterprise existing at the time the notes were executed was a partnership in the Brazos Cattle Company. Although five people, including Tirey and Darden, were present at the execution of the notes, only Darden and a partnership employee named Don Warren survived until the time of trial. The only witness permitted to testify to the conditions leading up to the execution of the notes was Warren.

Warren did not purport to have personal knowledge of which of the two parties to the instrument owed the other. Warren testified only to the conversation between Tirey and Darden. Warren testified that Tirey phoned Darden and asked Darden to come to Tirey's office for a meeting to straighten out their business. At the meeting Tirey told Darden that if he, Tirey, could make an acceptable financial statement he could borrow enough money to settle up with Darden on the Brazos Cattle Company accounts. Tirey asked Darden to execute the two notes at issue so that Tirey could list them on his financial statement with the understanding that the notes would not represent any obligation of Darden to Tirey. The notes were made in odd amounts and given different due dates to appear genuine. Warren was not permitted to testify whether Tirey owed Darden. Warren testified that Tirey said he owed Darden. There is no evidence that the notes represent obligations owed Tirey by Darden. The record is silent as to whether Tirey did make a financial statement, did seek a loan, or paid Darden anything. The notes were not negotiated by Tirey.

Three unobjected to issues were submitted to the jury. In response to those issues the jury found that no consideration existed for Darden's signature, and that Darden signed and delivered the notes so that Tirey could make a financial statement with which to get a loan and settle up with Darden. Plaintiff Harrison moved to disregard the jury's answer to the no consideration issue on the basis of no evidence, and to give judgment on the findings that Darden was to be paid. Her theory was that Darden's being paid was consideration to Darden for his promise to make the notes. The trial court granted Plaintiff's motion. Defendant Darden asserted by motion for new trial that he was entitled to judgment since the jury's answers that he executed the notes for the purpose of Tirey's obtaining credit thereby established his defense that the notes were made to Tirey only as accommodation paper.

■ The defense of accommodation maker is now defined by Section 3.415 of the Texas Business and Commerce Code, V.T.C.A.[1] Section 3.415 provides *inter*

---

1. That section reads as follows:
"§ 3.415. Contract of Accommodation Party
(a) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.
(b) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.
(c) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.
(d) An indorsement which shows that it is not in the chain of title is notice of its accommodation character.
(e) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on

*alia* that any person who signs an instrument in any capacity for the purpose of lending his credit to another party to the instrument is not liable to the party accommodated,[2] and may, as against the accommodated party, offer oral proof of his accommodation status.[3] Section 3.415 eliminates the requirement that existed under the repealed Article 5933, Section 29, Tex.Rev.Civ.Stat. (1925), that the accommodation maker must act gratuitously, receiving no direct benefit from the transaction as would comprise consideration for the accommodation maker's signature. Comment 2 to the new Section 3.415 reads as follows:

> "2. Subsection [(a)] eliminates the language of the old Section 29 [of the Uniform Negotiable Instruments Law] requiring that the accommodation party sign the instrument 'without receiving value therefor.' *The essential characteristic is that the accommodation party is a surety, and not that he has signed gratuitously.* He may be a paid surety, or receive other compensation from the party accommodated. He may even receive it from the payee, as where A and B buy goods and it is understood that A is to pay for all of them and that B is to sign a note only as a surety for A." [Emphasis added]

■ By a point preserved in his motion for new trial and urged in the court of civil appeals Defendant Darden complained that the trial court erred in not entering judgment for Defendant on the basis of

jury answers establishing that Darden signed the notes as an accommodation party. Under the applicable substantive law the fact Darden's signing was not gratuitous is immaterial. Therefore, his points before the court of civil appeals were correct and should have been sustained. The judgment entered by the court of civil appeals is, therefore, erroneous.

Plaintiff Harrison argues that this result is precluded. She argues that the condition of Subsection (a) of Section 3.415 as clarified by official comments (1) and (2),[4] that the accommodating party be a *surety*, as well as unchanged prior law, requires that unless the instrument itself is *negotiated* to a third party who thereby extends credit to the accommodated party, no accommodation status results. In support of her proposition Plaintiff cites Brinker v. First Nat. Bank of Cleveland, 16 S.W.2d 965 (Tex.Civ.App.—Austin 1929), reversed on other grounds, 37 S.W.2d 136 (Tex. Comm.App.—1931, jdgmt. adopted); Paden v. American State Bank & Trust Co., 103 S.W.2d 243 (Tex.Civ.App.—El Paso 1937, writ dism.); McIntosh v. White, 447 S.W. 2d 75 (Mo.Ct.App.1969); Morrison v. Painter, 170 S.W.2d 965 (Mo.Ct.App.1943). The crux of Plaintiff's argument is the following language appearing in court of civil appeals opinion in *Brinker* at 16 S. W.2d 967:

> "The fact that a party who signs a note as maker himself receives no consideration does not necessarily constitute him an accommodation maker for the payee.

---

the instrument against such party. (59th Legis., Ch. 721, Sec. 3.415.) Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, § 1."

2. Official comment 4 reads *inter alia* as follows:
   "4. As a surety the accommodation party is not liable to the party accommodated; but he is otherwise liable on the instrument in the capacity in which he has signed."

3. Official comment 1 reads *inter alia*:
   "Under subsection [(c)] except as against a holder in due course without notice of the accommodation, parol evidence is admissible to prove that the party has signed for ac-

commodation. In any case, however, under subsection [(d)] an indorsement which is not in the chain of title (the irregular or anomalous indorsement) is notice to all subsequent takers of the instrument of the accommodation character of the indorsement."

4. Official comment 1 provides *inter alia*:
   "1. Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it."

In legal acceptation, accommodation as applied to notes and other paper has a technical meaning and is not used in its broadest popular sense. The fact that the payee may receive benefit or be accommodated by or may solicit the signature of a party who receives no consideration therefor does not constitute such party an accommodation maker for the payee. *It is only in those cases where the note is executed for the sole purpose of its negotiation by the payee in order that he may obtain credit thereby, and under an agreement that he is to provide for payment at maturity and indemnify the maker, that the instrument becomes in law accommodation paper for the payee."* [Emphasis added]

■■■ The facts in Brinker v. First Nat. Bank, supra, are representative of the cases on which Plaintiff relies. In *Brinker*, a man named Turley wanted to buy Brinker's interest in a partnership owned by Brinker and Wear. To do so Turley borrowed money from the Plaintiff Bank on a note co-signed by Brinker and Wear. After some extensions on the note, some of which occurred after the death of Wear, the Bank sued all three makers of the note. Brinker answered alternatively that he had accommodated the payee bank instead of the principle maker Turley, or that as surety of Turley he had been released by extensions. The trial court instructed a verdict for the Plaintiff Bank. The court of civil appeals affirmed. It correctly held that the fact the bank received the benefit of making a loan it would not otherwise have made did not make it the accommodated party. However, the emphasized language set out above to the extent it requires the party claiming accommodation status to prove the claimed accommodated payee *negotiated* the instrument is disapproved. Accommodation status has long been invoked in Texas against the proper accommodated party in the absence of negotiation. Whitesboro National Bank v. Wells, 143 Tex. 232, 184 S.W.2d 276 (1944); Central Nat. Bank of Waco v.

Lawson, 27 S.W.2d 125 (Tex.Comm.App. 1930, jdgmt. adopted). See also, First Nat. Bank of Reedley v. Reed, 198 Cal. 252, 244 P. 368 (1926); Lepori v. Hilson, 109 Cal. App. 295, 293 P. 86 (1930). The essential element that the party claiming accommodation status must prove is that the party claimed to be accommodated received the signature of the surety *for the sole purpose of obtaining credit thereby,* under an agreement that the accommodated party is principally responsible for payment at maturity, or that the instrument was executed for a limited purpose. In the usual course of transactions wherein the payee of an instrument is the party accommodated, it is to be expected that the means by which he obtains credit will be by negotiation. However, we do not view that feature to be the controlling element.

The court of civil appeals by failure to sustain Defendant's point committed reversible error. We have examined the brief of the prevailing party in the court of civil appeals to determine whether there are alternative grounds for affirmance. McKelvy v. Barber, Tex., 381 S.W.2d 59 (1964); Holland v. Nimitz, 111 Tex. 419, 239 S.W. 185 (1922); Calvert, Some Problems of Supreme Court Review, 21 Tex.B. J. 75 (1958). There being no ground stated, the judgment of the court of civil appeals must be reversed.

The judgment of the courts below are reversed. The judgment is rendered in favor of the Defendant Darden.

Dissenting opinion by SAM D. JOHNSON, J., in which STEAKLEY, J., joins.

SAM D. JOHNSON, Justice (dissenting).

This dissent is respectfully submitted on the issue of D. M. Darden, Jr.'s accommodation status. An accommodation party must be a *surety*. Darden was never a surety and there was no intent that he ever becomes such. Darden is therefore not entitled to claim the defense of accommodation maker and the judgments of the

courts below should accordingly be affirmed.

Section 3.415(a) of the Texas Business & Commerce Code, Vernon's Annotated Civil Statutes, recites, "[a]n accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." Comment 2, clarifying Section 3.415, reads:

"2. Subsection (1) eliminates the language of the old Section 29 requiring that the accommodation party sign the instrument 'without receiving value therefor.' The essential characteristic is that the accommodation party is a surety, and not that he has signed gratuitously. He may be a paid surety, or receive other compensation from the party accommodated. He may even receive it from the payee, as where A and B buy goods and it is understood that A is to pay for all of them and that B is to sign a note only as a surety for A."

Comment 2 clearly indicates that the accommodation party must be a *surety* and this is the requirement Darden fails to meet. For suretyship to exist, there must be an obligee and more than one obligor; *e. g.,* a tripartite arrangement involving the lending of credit. "Broadly defined, a surety is a party to a contract who agrees to pay the obligation of another under some circumstances." Peters, Suretyship Under Article 3 of the Uniform Commercial Code, 77 Yale L.J. 833 (1968). "Suretyship is the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform." RESTATEMENT, Security § 82 (1941). "Suretyship is invariably a tripartite relationship in which the obligation of the surety is intended to supplement an obligation of the principal (also described as the debtor or obligor) owed to the creditor (also described as the obligee)." Clark,

Suretyship in the Uniform Commercial Code, 46 Tex.L.Rev. 453 (1968).

Under the singular facts in this case, Darden is not a surety. Warren testified and the jury found that Tirey intended to list these notes on his financial statement. The notes were not negotiated and there is no evidence in the record that Tirey or Darden contemplated their negotiation. That being so, Darden did not lend his credit to Tirey on the instrument. A tripartite arrangement involving the lending of credit never came into existence. No creditor was looking to Tirey as principal debtor and Darden as surety on the instrument. Failure to prove suretyship is fatal to Darden's case for, as comment 2 of Section 3.415 of the Texas Business & Commerce Code, V.A.C.S., clearly specifies, "[t]he *essential characteristic* is that the accommodation party is a *surety*, . . ." [Emphasis supplied.]

Cases in which a party obligated on an instrument has defended by claiming that the payee is an accommodated party are few in number, but support the result reached here. Cases in which the defendant seeks to avoid liability on a note by claiming he signed as an accommodation to the payee break down into two categories: (1) cases which actually turned on lack of consideration; and (2) cases which turned on true accommodation status. Keeping this distinction in mind clarifies prior cases immensely.

Several cases which denied the payee recovery against the maker speak in terms of accommodation parties and thus appear at first glance to be relevant to the instant case. Whitesboro Nat. Bank v. Wells, 143 Tex. 232, 184 S.W.2d 276 (1944); First Nat. Bank v. Reed, 198 Cal. 252, 244 P. 368 (1926); Central Nat. Bank v. Lawson, 27 S.W.2d 125 (Tex.Comm'n App.1930, jdgmt adopted); Lepori v. Hilson, 109 Cal.App. 295, 293 P. 86 (1930); and Deems v. Wilson, 114 Ga.App. 341, 151 S. E.2d 230 (1966). However, in each of these cases the discussion about accommo-

dation parties was dicta because the instruments in each case were not supported by consideration. With the exception of Deems v. Wilson, *supra*, all of the cases were decided under the Uniform Negotiable Instruments Law which varied in one critical respect from the Uniform Commercial Code. The Uniform Negotiable Instruments Law, Article 5933, Section 29, V.A.C.S., required that an accommodation party sign "without receiving value therefor." Thus, in the context of the above cases, where the payee sued the maker, the result turned solely on lack of consideration. If the maker proved no consideration, the court sometimes termed him an accommodation maker, but the failure of consideration was a defense in itself. Some of the confusion in thinking and terminology is illustrated in Central Nat. Bank v. Lawson, *supra*, where the court said, "[i]t is also insisted that parol evidence was not admissible to show a promise by the bank's president that he (Lawson) would never be called on to pay the note . . . but in all those cases the rule is recognized that parol evidence is admissible to show a failure of consideration." 27 S.W.2d 125 at 127. Further on in the opinion the *Lawson* court said, "[i]n this case Lawson pleaded two complete defenses, one of failure of consideration, which includes that of accommodation maker, . . ." 27 S.W.2d 125 at 128.

In cases where the maker could not prove a failure of consideration, the courts have been more careful of their terminology. In all cases where the maker, co-maker, or endorser defended by claiming that the payee-plaintiff was actually an accommodated party, the courts have denied recovery to the payee only where the alleged accommodation party was a surety. For example, in McKeever v. Brooks-Davis Chevrolet Co., 74 S.W.2d 311 (Tex.Civ. App.—Eastland 1934, writ dism'd), the payee requested the endorser's signature so he could "sell said note, or borrow money thereon." *See also* United Refrigerator Company v. Applebaum, 410 Pa. 210, 189

A.2d 253 (1963). Since the parties to the notes in these two cases contemplated that the payee would further negotiate the note, the defense of accommodation endorser was correctly asserted. The taker of the note from the payee would be the creditor with the right to call on both the original payee and the endorser. As between themselves, the endorser was lending his credit to the payee to make further negotiation of the note possible.

Where the note is not negotiated and no intent to further negotiate the note is shown, the payee is not an accommodated party. The Missouri Court of Appeals has twice denied relief to a maker who claimed to have accommodated the payee. McIntosh v. White, 447 S.W.2d 75 (Mo.Ct. App.1969); Morrison v. Painter, 170 S.W. 2d 965 (Mo.Ct.App.1943). As explained in these cases, for the maker to be lending his credit to the payee, the purpose of the transaction must be for the payee to obtain credit on the strength of the maker's name by further negotiating the note. A Texas court of civil appeals followed the same logic in denying relief to a co-maker in Brinker v. First Nat. Bank, 16 S.W.2d 965, 967 (Tex.Civ.App.—Austin 1929). Although the court of civil appeals opinion was affirmed in part and reversed in part on appeal (Tex., 37 S.W.2d 136, 1931, jdgmt. adopted), the commission of appeals found that the co-maker had accommodated the other *maker*, never reaching the question of facts necessary to prove that the payee was an accommodated party. In a subsequent Texas case where an endorser claimed to have accommodated the payee, the court said, "[i]t is only in those cases where the note is executed for the sole purpose of its negotiation by the payee in order that he may obtain credit thereby, and under an agreement that he is to provide for payment at maturity and indemnify the maker, that the instrument becomes in law accommodation paper for the payee." Paden v. American State Bank & Trust Co., 103 S.W.2d 243, 245 (Tex.Civ. App.—El Paso 1937, writ dism'd).

There is a line of cases establishing that a payee may not rely on a prior or contemporaneous agreement between the maker and the payee that the note will *not be enforced*; oral testimony regarding such agreement violates the parol evidence rule and will not be received. McPherson v. Johnson, 436 S.W.2d 930 (Tex.Civ.App.— Amarillo 1968, writ ref'd n. r. e.); Martin v. Coastal States Gas Producing Company, 417 S.W.2d 91 (Tex.Civ.App.—Eastland 1967, no writ). In both *McPherson* and *Martin* the maker claimed that the plaintiff had told him the note would not be enforced, and in both cases the court said this was an attempt to vary the terms of the note with a prior or contemporaneous oral agreement and as such was no defense. *See also* Snowden v. Franklin National Bank of Long Island, 338 F.2d 995 (5th Cir. 1964). Other jurisdictions have recognized that public policy estops the parties to a note from claiming an agreement not to enforce a negotiable instrument. Perfect Pictures Frames, Inc. v. Consolidated Fine Arts, Ltd., 9 U.C.C.R.S. 283 (N.Y.Sup.Ct.1971); Lincoln National Bank v. Govern, 5 U.C.C.R.S. 382 (N.Y. Sup.Ct.1968); National Bank of North America v. Around the Clock Truck Service, 5 U.C.C.R.S. 866 (N.Y.Sup.Ct.1968); Marine Midland Trust Co. of New York v. Couphos, 3 U.C.C.R.S. 66 (N.Y.Sup.Ct. 1965); Anderson, Uniform Commercial Code, Vol. 2, § 3.415.10 at 1003 (1971).

Suretyship should be distinguished. In a suretyship arrangement it is understood at the outset that the note *is* enforceable. It is implicit in such relationship that if the party making the accommodation is called upon to pay the note he may require reimbursement from the accommodated party.

What Tirey and Darden did in the instant case was agree between themselves that Tirey would not enforce the instruments Darden executed, precisely the type of agreement Texas courts hold invalid. If Tirey and Darden had contemplated negotiation of the notes with the understanding that Tirey would be ultimately liable despite Darden's signature as maker, then the defense he asserted here, that of accommodation maker, might be held valid. The instant record is utterly devoid of any such indication or proof of this, however. The distinction is between an invalid agreement that a note will not be enforced and a valid suretyship reimbursement agreement. Absolving Darden from liability abolishes the suretyship requirement in the Uniform Commercial Code and overturns McPherson v. Johnson, *supra*, and like cases.

STEAKLEY, J., joins in this dissent.